UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LARRY FALKINS | CIVIL ACTION |
| VERSUS | NO. 21-1749 |
| ROBERT GOINGS, ET AL. | SECTION: "J"(1) |

## ORDER & REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 52)** filed by Defendants, Robert Goings, Jonathan Stringer, Lance Wallace, Jacob Waskom, Robert Tanner, and the State of Louisiana through Louisiana Department of Public Safety and Corrections ("DPSC") and an opposition thereto (Rec. Doc. 57) filed by Plaintiff Larry Falkins. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED.**

## FACTS AND PROCEDURAL BACKGROUND

This litigation concerns an incident at the Rayburn Correctional Center in Angie, Louisiana involving Plaintiff Larry Falkins, an inmate housed at Rayburn. Plaintiff alleges that Sergeant Robert Goings ordered him to go to Lieutenant Jonathan Stringer's office on December 3, 2019. Plaintiff alleges that, in the office, Stringer wrapped his hands around Plaintiff's neck, and Goings punched Plaintiff in the face, resulting in Plaintiff beginning to lose consciousness and fall to the floor. He alleges that Defendants continued to choke and punch him, and kick him in his head and face, so that when he regained consciousness, his eyes were swollen shut; his ear, nose and mouth were bleeding; and he spit out a tooth had been knocked out. Plaintiff alleges that he then was dragged out of the office and evaluated at an infirmary. He

was then transported to an emergency department and then evaluated again at University Medical Center. On December 4, 2019, he was discharged back to Rayburn, and his alleged injuries included concussion, both eyes swollen shut, eye sockets fractured, nose injury, tooth knocked out, lip split, and wrist injury.

Defendants completed post-incident reports on the afternoon of December 3, 2019. One disciplinary report, prepared by Defendant Stringer provides the following description of the incident. A confidential informant stated Plaintiff was in possession of drugs, so Defendants Stringer, Waskom and Goings escorted Plaintiff to the Lieutenant Office for a strip search. While escorting him, Stringer ordered Plaintiff to remove his sunglasses, which revealed both eyes swollen. Once inside the office, Plaintiff put his hand in his pocket and then placed something in his mouth. The report states that Stringer then ordered him to spit it out, and Goings secured Plaintiff's head so that Stringer could apply pressure to Plaintiff's hypoglossal nerve. Stringer continued to order him to spit out the object, and then he and Plaintiff fell to the floor. On the floor, Plaintiff placed his hand on Stringer's throat and started squeezing, and Stringer struck Plaintiff's arm to get him to release his throat. Plaintiff then struck Stringer's face with the palm of his hand. Stringer then used his left knee to secure Plaintiff's right arm. Stringer again applied pressure to Plaintiff's hypoglossal nerve while ordering Plaintiff to spit it out, and then Plaintiff spit out the two pieces of white paper, at which time Stringer released the pressure. Stringer then alleges that, after Plaintiff was placed in handcuffs, Plaintiff refused to walk, so Stringer and Wallace placed Plaintiff in a reverse transport iron wrist lock to gain

compliance while ordering him to walk. Stringer also declared under penalty of perjury the same facts outlined in the report.

Another disciplinary report, prepared by Defendant Waskom, states that, while being escorted from the dorm to the office, the officer observed Plaintiff to have both eyes swollen. Video footage of Plaintiff's dorm revealed that on December 2, 2019 (the day before the incident in the office), another inmate struck Plaintiff in the side of the face with a closed fist twice and rammed Plaintiff's head into the wall. Plaintiff did not retaliate, and he and the other inmate involved were seen by medical staff and placed in investigative segregation. The other inmate was issued a rule violation for aggravated fighting, resulting in a sentence of forfeiture of good time and quarters confinement.

Defendant Stringer's disciplinary report cited violations of Rule 1 (Contraband), Rule 3, Defiance, and Rule 5 (Aggravated Disobedience). Plaintiff appeared before the prison disciplinary board on December 23, 2019 and pled not guilty to the violations of Rules 3 and 5, but guilty to the violation of Rule 1. The board found Plaintiff guilty of the violations and sentenced him to a loss of 60 days good time for the Rule 1 violation, disciplinary segregation for 90 days and 90 days lost of good time for the Rule 3 violation, and 10 days isolation and 4 weeks cell confinement for the Rule 5 violation. Under the section labeled "reasons for disposition," the Board marked that the officer's report is clear and precise, the officer's version is determined to be more credible than the inmate's version, and that the only defense was a denial of the contents of the report.

Plaintiff filed this lawsuit alleging claims under 42 U.S.C. § 1983 for violations of his civil rights and excessive force, as well as a state law negligence and respondeat superior claim against the warden and the prison. On November 29, 2022, Defendants filed the instant motion for summary judgment, contending that Plaintiff's claims should be dismissed with prejudice pursuant to the United States Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994). (Rec. Doc. 52). Defendants argue that, because Plaintiff was convicted of rule violations related to his actions during the incident in the Lieutenant's Office and lost good time for that incident, a verdict in his favor would imply the invalidity of his disciplinary convictions, which is barred under *Heck*. *Id.* at 7-21. Alternatively, they argue that the defendants are entitled to qualified immunity. *Id.* at 21-22.

In response, Plaintiff contends that the post-incident reports should be excluded as inadmissible hearsay and that the actual series of events better explain the extent of his injuries, including facial fractures and black eyes. (Rec. Doc. 57). He alleges that he was brutally attacked, choked, and punched several times in the face while in the Lieutenant's office and again on the walk back to the dorm after leaving the office. *Id.* at 9-15. Finally, he argues that the record is insufficient for a *Heck* analysis and that qualified immunity does not apply because the officers acted unreasonably. *Id.* at 18-22.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as

to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element

of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

### I. Plaintiff's § 1983 Claim

Defendants argue that Plaintiff's § 1983 claims are barred by *Heck*, so they are entitled to summary judgment. Heck precludes a plaintiff from recovering damages "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction invalid," unless the plaintiff proves that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–487. Essentially, *Heck* bars litigation of a § 1983 claim if success on that claim "would necessarily imply that a prior conviction or sentence is invalid" in order to prevent duplicative or conflicting judgments. *Aucoin v. Cupil*, 958 F.3d 379, 382 (5th Cir. 2020) (citing *Heck*, 512 U.S. at 486–87).

The *Heck* doctrine applies to prison disciplinary convictions as well as prison disciplinary rulings that result in the duration of confinement, including loss of good-time credits. *Santos*, 18 F.4th at 476 (citing *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (en banc)); *Edwards v. Balisok*, 520 U.S. 641, 646–48 (1997). However,

*Heck* does not bar a prisoner's claim if the claim "threatens no consequence for his conviction or the duration of his sentence." *Santos*, 18 F.4th at 476 (citing *Muhammad v. Close*, 540 U.S. 749, 750 (2004).

Determining whether a § 1983 claim challenges a conviction is fact-intensive. *Id.* The claim is barred only if granting it requires "negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction." *Santos v. White*, 18 F.4th 472, 476 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 2817 (2022) (quoting *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008)). However, if the factual basis for the conviction is "temporally and conceptually distinct" from that of the § 1983 claim, *Heck* will not bar the civil claim. *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008)

If a plaintiff's factual account, taken as true, necessarily contradicts the factual determination underlying the plaintiff's disciplinary conviction, the plaintiff's claim is barred by *Heck*. *Aucoin*, 958 F.3d at 383. In *Aucoin*, the plaintiff alleged that prison staff snuck up on him in his cell, sprayed him with mace, and beat him, and that plaintiff himself was blameless for the officers' use of force against him. *Id.* However, the plaintiff was later found guilty of defiance, aggravated disobedience, and property destruction in disciplinary proceedings for that incident in his cell. *Id.* Because the plaintiff's factual account was at odds with that conviction and "squarely challenged the factual determination" underlying his conviction, the Fifth Circuit affirmed the dismissal of plaintiff's claims of excessive force within his cell. *Id.* However, the Fifth Circuit distinguished that *Heck* did not bar the claims for excessive force that

occurred in the shower and lobby after the plaintiff surrendered, because the factual basis for those claims was temporally and conceptually distinct from his conviction from the incident in his cell. *Id.* at 383-84.

Prison disciplinary board reports are not hearsay if they are offered to demonstrate that the disciplinary board found a prisoner guilty of specific offenses, rather than to prove that the prisoner actually committed the offenses. *Santos*, 18 F.4th at 477. In *Santos*, a prison disciplinary board found the plaintiff guilty of nine rules violations, and the district court granted summary judgment for the defendants after determining the plaintiff's § 1983 excessive force claims were barred by *Heck*. *Id.* at 476. In vacating the summary judgment, the Fifth Circuit found that the elements for the violations did not appear in the record on appeal, so it was impossible to perform the fact-specific determination of which facts were necessary to the disciplinary board's conclusions. *Id.* The court also held that *Heck* did not bar the plaintiff's excessive force claims that occurred after the incidents that led to the plaintiff's disobedience, defiance, and property destruction conviction. *Id.* Specifically, the plaintiff's later disciplinary sanctions were loss of canteen and phone privileges, which are not sanctions affecting the validity or duration of confinement so *Heck* did not apply. *Id.* Moreover, the Fifth Circuit held that the district court was correct in considering the defendants' exhibits, including disciplinary reports, because they were not hearsay and because at the summary judgment stage, evidence must only be of a type can be admissible. *Id.*

Thus, in this case, the Court may consider the disciplinary decisions to determine whether Plaintiff's claims are *Heck*-barred. Here, the disciplinary records demonstrate that Plaintiff was found guilty of all three charged rule violations (Contraband, Defiance, and Aggravated Disobedience), and two of those convictions resulted in the loss of 150 days of good time. (Rec. Doc. 52-5, at 2). All three rule violations were the result of the incident in the office, which led to Plaintiff's excessive force claims. *Id.* Plaintiff has not demonstrated that the disciplinary decisions have been overturned or terminated in his favor. In fact, the January 23, 2020 First Step Response letter and the February 10, 2020 Second Step Response letter both denied Plaintiff's requested administrative remedy because there was no evidence to support his allegations of physical abuse by correctional staff. (Rec. Doc. 52-6, at 2-4). Thus, the disciplinary conviction has affected Plaintiff's sentence by reducing his good time credit, and Plaintiff has not demonstrated that the decisions have been terminated in Plaintiff's favor, a condition required by *Heck*.

The factual basis for Plaintiff's excessive force claims is also temporally and conceptually intertwined with Plaintiff's disciplinary conviction; he alleges that the officers used excessive force during the same time period and in the same incident from which he was convicted of three rules violations. In opposition to summary judgment, Plaintiff does not deny Defendants' assertion that he placed his hand in his pocket and then placed an unknown object in his mouth. Instead, he contends that, "If they thought I had something, they would have frisked me at my bed, which is what they normally do and they normally come to an offender suspected of drug

possession and they search the bed area. This was not done." (Rec. Doc. 47, at 10). Plaintiff alleges that Defendant Stringer did not order him to spit out anything in his mouth, and instead, Plaintiff was attacked while emptying his pockets. *Id.* at 11. Plaintiff also alleges that he did not try to choke Defendant Stringer because he was completely under the physical control of the officers, and that at some point Plaintiff passed out while Defendant Stringer choked him. *Id.* He also contends that when he woke up, the officers were punching him, and he again lost consciousness. *Id.* at 12. Plaintiff contends that he did not spit out two pieces of white paper, but instead spit out a piece of his tooth that was broken off, because he had no drugs. *Id.* Finally, Plaintiff claims that he never refused to walk out of the office, and he was not resisting orders to walk. *Id.* at 13. In sum, Plaintiff maintains his innocence in the events that led up to the disciplinary convictions and that he was compliant at all times.

As in *Aucoin*, if Plaintiff's factual account is taken as true, then Plaintiff cannot be guilty of violations of the prison rules regarding Contraband, Defiance, and Aggravated Disobedience. Plaintiff's § 1983 claim is barred if it requires negating an element of his conviction. *See Santos*, 18 F.4th at 476. Rule 1 (Contraband) is defined as: "no offender shall have under his immediate control any illicit drugs. . ." (Rec. Doc. 52-7, at 18). Although Plaintiff argues that he never had drugs, his disciplinary conviction thus requires the element that he had under his immediate control, an illicit drug. Rule 3 (Defiance) is defined as: "no offender shall commit or threaten physically or verbally to commit bodily harm upon another person. . ." *Id.* at 19.

Although Plaintiff argues he neither struck nor attempted to choke any of the Defendants, his disciplinary conviction thus requires the element that he committed or threatened to commit bodily harm upon another person. Rule 5 (Aggravated Disobedience) is defined as: "offenders must obey direct verbal orders cooperatively and promptly and not debate, argue or ignore orders before obeying." *Id.* Although Plaintiff argues that he never had drugs to spit out and never resisted an order to walk, his disciplinary conviction thus requires the element that he did not obey direct verbal orders cooperatively and promptly. Again, the disciplinary board found Stringer's report to be clear and precise and more credible that Plaintiff's version of events, and Stringer's report satisfies the elements required to find a prisoner guilty of violations of the Contraband, Defiance, and Aggravated Disobedience Rules.

Because Plaintiff's claim is based solely on his assertion that he did nothing wrong and was attacked by the officers for no reason, his suit squarely challenges the factual determinations of elements underlying his conviction and is necessarily at odds with the conviction. A judgment in Plaintiff's favor would therefore imply the invalidity of his convictions. Therefore, Plaintiff's § 1983 claim is barred by *Heck*, and the Court must grant summary judgment in favor of defendants with respect to this claim.

## II. Plaintiff's State Law Claims

Because the Court has concluded that Plaintiff's § 1983 claim is barred, only Plaintiff's state law negligence and respondeat superior claims remain. Specifically, Plaintiff claims that the Rayburn Correctional Center and Warden Tanner knew or

should have known that Defendants were using excessive force, but did nothing to supervise or train them. (Rec. Doc. 1-2, at 6-7).

Because the Court concluded that Plaintiff's § 1983 excessive force claims are barred under *Heck*, Plaintiff's negligence and respondeat superior claims, which rely on the same facts underlying the § 1983 claims, are also barred pursuant to *Heck*. For Plaintiff to prove either that the Warden supervising the officers and the employer employing the officers were liable for the officers' excessive force, Plaintiff must establish his excessive force claim. Because the Court has already found that proving the excessive force claim would be inconsistent with Plaintiff's disciplinary convictions, Plaintiff's state law negligence and respondeat superior claims are similarly barred.

Accordingly,

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' *Motion for Summary Judgment* **(Rec. Doc. 52)** is **GRANTED.** Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this 21st day of December, 2022.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE